## 722.  HOWARD *v.* THE STATE.

1. Upon the trial of one charged in the same indictment with murder and assault with intent to murder, where there is no evidence of a mutual intent to fight, neither the law of voluntary manslaughter nor that of assault and battery is necessarily involved. The law of voluntary manslaughter is, however, applicable to evidence showing the homicide to have been committed under that sudden, violent impulse of passion supposed to be irresistible, and justly aroused, either by an assault or other equivalent circumstances.
2. The deliberate intent to kill must be shown before a conviction of assault to murder is authorized. The nature of the instrument used in making the assault, the manner of its use, and the nature of the wounds inflicted, as well as the brutality and duration of the assault, are each and all circumstances from which an intent to kill may be inferred.
3. The evidence as to the circumstances of the assault, being uncontradicted and suggesting no reasonable hypothesis save that the assault was made with intent to kill (either maliciously or in self-defense), a charge upon the subject of assault and battery would have been error.
4. Every phase of the law of justifiable homicide and self-defense having been fairly and lucidly presented to the jury, and the evidence fully authorizing the verdict rendered against the defendant, there was no error in the judgment refusing a new trial.

Indictment for assault with intent to murder, from Muscogee superior court—Judge Little. August 9, 1907.

Argued October 9,—Decided November 11, 1907.

*T. T. Miller,* for plaintiff in error.

*S. P. Gilbert, solicitor-general, Spencer R. Atkinson,* contra.

RUSSELL, J. The defendant was convicted of assault with intent to murder. His motion for new trial was overruled, and he excepts. The complaint of the plaintiff in error, though variously presented by the learned and ingenious counsel, is addressed to only one point,—the failure of the court to instruct the jury that

the defendant might be found guilty of assault and battery. The exceptions contained in the seventh and eighth grounds of the amended motion for new trial, in which it is insisted that the court erred in certain instructions, are without merit, when the excerpts complained of are considered in connection with the entire charge. In the lucid presentation of the law of murder and of justifiable homicide, and of assault with intent to murder, we can not find a single flaw. The jury could not have been misled or confused by any of the instructions of the court; and they were told more than once that the defendant could not be convicted of assault with intent to murder unless the proof showed a deliberate intention on his part to kill the deceased. But the court did not instruct the jury upon the theory of the law of mutual combat, except as related to the defense of voluntary manslaughter. If the law of voluntary manslaughter should have been given in charge to the jury to guide them in case they believed the death of the deceased was due to the act of the defendant, the jury should have been instructed that if they believed that the defendant assaulted the deceased under such circumstances as that if death had resulted the defendant would only have been guilty of voluntary manslaughter, and, in that event, if they were not satisfied that the death of the deceased resulted from the act of the defendant but were satisfied that the defendant assaulted him, then the defendant might be guilty of assault and battery. No exception is taken to the charge of the court upon the subject of voluntary manslaughter. The complaint is, that the jury should have been instructed that the defendant might be convicted of a lesser offense than that of assault with intent to murder. The exception is presented in the tenth ground of the amended motion for new trial, as follows: "Because the court erred in failing to charge the jury upon the law of assault and battery in connection with his charge of the law of assault with intent to murder, there being evidence of mutual combat between the deceased and the accused, so that the jury may have been instructed that, in the event they should believe from the evidence that the defendant, though not justifiable in striking the deceased and though they may not have believed that if death had ensued the crime would have been murder, the jury, under such circumstances, could return a verdict against the defendant for the offense of assault and battery."

In our view of the case there was no phase of the evidence under which a charge upon the subject of either voluntary manslaughter or of assault and battery was required. The defendant might have taken exception to the charge upon the law of voluntary manslaughter, but he has preferred not to do so. But the fact that the law of voluntary manslaughter was charged, where the evidence in the case did not authorize this instruction, affords no ground of exception to the failure to charge the law of assault and battery. The issue between the State and the accused at the conclusion of the testimony was clear cut and well defined. The assault of the defendant upon the deceased was either justifiable, because in self-defense, or it was a wanton, cruel, and unprovoked attack with intent to kill. If the jury believed the defendant was justifiable, he should have been acquitted. If they believed, as they were obliged to do from the barbarous character of the injuries inflicted upon the deceased, that the defendant intended to kill him, then there remained only one question for the jury to settle, which was, whether the death of the deceased was caused by the wounds inflicted by the defendant, or whether his death resulted from wounds received at the hands of another. If the jury believed that the defendant struck the deceased repeatedly with a cedar stick until the back of his head was a mass of matted blood and brains, under the circumstances testified to by the witnesses for the State, and further believed that the wounds with the stick caused the death of the deceased, they should find the defendant guilty of murder. If they were not satisfied or had reasonable doubt as to whether the death of the deceased resulted from the blows inflicted by the defendant, or whether the stabs and pistol wounds were the immediate cause of death, then they should find the defendant guilty of assault with intent to murder. There is not a particle of evidence in the record which evidences that there was a mutual intent to fight on the part of the defendant and the deceased, unless it be the statement of the deceased, drunken, helpless, bleeding, perhaps dying, with his face to the ground, that he would kill the defendant if he ever got up. And this statement was made after he had been beaten to the ground by from five to eight blows from the heavy cedar stick used by the defendant. According to the testimony in behalf of the defendant, he struck the deceased because he was obliged to, and this is also his statement. It was a case of

urgent, pressing necessity, in absolute protection of his life and safety. The deceased, according to this testimony, was advancing upon the defendant in a terrible passion, inflamed to madness by liquor, with a long and dangerous knife, with the evident present intent, if possible, to kill the defendant, and the defendant used no more force than was necessary to protect himself in this imminent danger. The jury were fully instructed on the only theory of justification presented by the defendant, and no theory of mitigation was presented by the evidence. According to the testimony for the State, the defendant rushed upon the deceased, who was engaged in a quarrel with some negroes, before the deceased was even aware of his presence,—threw him to the ground, first choked him, and then beat him with a large cedar stick, while the deceased was prostrate upon the ground, until there were left, as a result of the beating, two complete fractures of the skull and various other wounds. From the standpoint of this testimony, the assault was unprovoked, the deceased had no time to form any intent to resist; and as he had, up to that time, been upon the best of terms with the defendant, it could not be said that he participated mutually with the defendant in an intent to fight. It has been decided that a mutual intent to fight can exist and never a blow be struck. But according to the evidence, if the deceased had time to form any intent before he was wounded nigh unto death by the defendant, it could hardly be said to be an intent to fight. The only intent must have been the intent to resist, in order, if possible, to defend himself. For, according to the testimony for the State, he had not fetched his weapons (he had none) ; nor had he begun a difficulty in concert with the defendant, because he was attacked by the defendant while engaged in a quarrel with other parties.

After a laborious inspection, rereading, and review of the voluminous mass of testimony in this case, we are satisfied that there is no error of law or of fact of which this plaintiff in error can justly complain. The record pictures one of the darkest tragedies and one of the most diabolical scenes which has ever been brought to our attention. It discloses a carnival of crime upon the fateful Sabbath day upon which the deceased lost his life. It is pathetic that as he bid his wife and little children farewell he kissed them each in turn. It is a sad testimonial to the frailty of human nature that he was hardly out of sight of his home, where he might

have spent a very different Sabbath, before the desire for strong drink had overmastered his better impulses. All Sunday morning (and the evidence shows that it was a bright and sunny Sabbath), the deceased, the defendant, and another companion spent their time in the successful search of one blind tiger after another. Bottle after bottle of whiskey was consumed as they went from one gambling rendezvous to another until they reached the house which, as it turned out, was to be the scene of the tragedy, and more whiskey was obtained. It is shown from the evidence that while the deceased had never before visited the Bryant house, the defendant was thoroughly at home there. In a short time the deceased, maudlin with inebriety, became engaged in a wordy difficulty with two of the negroes in the yard, while the defendant, according to his own statement, was conversing with the negro women and children in the house. Some one cries out that there is going to be a difficulty between the deceased and the negroes, and the defendant rushes from the house with an oath, telling the deceased that these are his negroes, and throws him to the ground. This much of the case is left in no doubt. Nor is it contradicted that the defendant struck the deceased several times with the knotted cedar stick, though it was testified that these blows were given in self-defense. There is ample evidence, on the other hand, from more than one witness, that the blows with the stick were wholly unprovoked. The jury had the right to determine which was the truth of the transaction; and the character of the stick and of the wounds inflicted (if the jury believed the assault was unprovoked) could leave no room whatever for speculation as to the intention with which the wounds were inflicted. There could be but one intent—whether it was successful or not—to kill the deceased.

*Judgment affirmed.*